JOS. L. MUSCARELLE, INC., Plaintiff.

v.

CENTRAL IRON MFG. CO., the Trybee Company, William DiMayo, Revenue Officer of the Internal Revenue Service, Albert Pipe Supply Company, Inc., Charles F. Guyon, Inc., R. E. Disch, Inc., Roberts & Wiese, A. & J. Friedman Supply Co., Inc., Contractors Supply Corp., Carlone Construction Company, Joseph T. Ryerson & Son, Inc., and Jobbers Credit Assoc., Inc., Trustee in Bankruptcy of Arthur E. Magher Co., Inc., Defendants.

The TRYBEE COMPANY, Inc. and Contractors Supply Corp., Third-Party Plaintiff,

v.

WESTERN ELECTRIC COMPANY, Inc., Third-Party Defendant,

and United States of America, Intervenor,

Carlone Construction Co., Third-Party Plaintiff, Appellant.

No. 16306.

United States Court of Appeals Third Circuit.

Argued May 5, 1967.

Decided June 28, 1967.

Merritt T. Viscardi, Newark, N. J. (Apruzzese & McDermott, Vincent J. Apruzzese, Newark, N. J., on the brief), for appellant.

James A. Major, II, Hackensack, N. J. (Major & Major, Hackensack, N. J., on the brief), for appellee.

Before STALEY, Chief Judge, and BIGGS and HASTIE, Circuit Judges.

## OPINION OF THE COURT

HASTIE, Circuit Judge.

The matter in controversy here is a claim under the New Jersey Mechanic's Lien Law against a property owner, Western Electric Co., by Carlone Construction Co., which had furnished labor and materials for a construction project that Western Electric had undertaken through a general contractor and various subcontractors. Carlone had dealt with a subcontractor who became bankrupt. Admittedly, the sum owed to Carlone is $20,000, but the court below awarded it as against the owner only $3,686.99, the sum which would remain in the possession of Western Electric after payment

to certain other materialmen who, in the court's view, enjoyed priority over Carlone. This appeal by Carlone followed.

■ We are concerned here with the so-called "stop notice" provisions of the New Jersey Mechanic's Lien Law. Under New Jersey law, if an owner shall duly file with the county clerk a copy of the general contract under which work is to be performed upon his property, no liens, except those of the general contractor, can thereafter attach to the property for labor and material supplied in the course of the work. N.J.S.2d:44–75, N.J.S.A. Instead, all claimants other than the general contractor are granted "stop notice" rights against money which the owner owes or shall become obligated to pay the general contractor. N.J.S. 2A:44–78, N.J.S.A. See generally Meyer v. Standard Accident Ins. Co., 1935, 114 N.J.L. 483, 177 A. 255.

■ To obtain such a right against money the owner owes or shall owe the general contractor, a materialman must file a notice of his claim in prescribed form with the appropriate county clerk. N.J.S. 2A:44–77, N.J.S.A. "After such notice is filed" the owner is authorized to withhold the amount of the noticed claim. N.J.S. 2A:44–78, N.J.S.A. And, upon verifying such claims, the owner is required to "pay the same in the order in which notices have been filed as provided by section 2A:44–77". N.J.S. 2A:44–80, N.J.S.A.

Section 2A:44–78 provides that "the claimant may, after filing * * * [a stop notice under section 2A:44–77] serve a copy thereof upon the owner of the building". The consequence of such service is stated in section 2A:44–81 as follows:

"Until service of a copy of the notice upon an owner as provided by section 2A:44–78 and 2A:44–79 of this title he shall be protected in payments made in good faith to any contractor or other person having a valid claim under sections 2A:44–77 to 2A:44–80 of this title. A failure to serve the notice herein provided for shall not otherwise affect the validity of such notice."

A question of priority of claims under this statutory scheme has resulted from the following sequence of events. Five creditors of a subcontractor filed stop notices against Western Electric as follows:

| | | |
|---|---|---|
| The Trybee Co., Inc. | Dec. 1, 1961 | $11,499.00 |
| Contractors Supply Corp. | Jan. 9, 1962 | $ 1,473.87 |
| Carlone Const. Co. | Feb. 28, 1962 | $20,000.00 |
| Charles F. Guyon, Inc. | Mar. 6, 1962 | $12,125.29 |
| A. & J. Friedman Supply Co., Inc. | Mar. 6, 1962 | $ 6,955.76 |

The priority of the Trybee and Contractors Supply claims is admitted. The present problem arises because, although Carlone's stop notice was filed before the notices of Guyon and Friedman, Carlone did not serve Western Electric with notice of its filing until December 6, 1962, while Guyon and Friedman served their notices in March, 1962, a few days after filing. In addition, Guyon and Friedman sued Western Electric on their claims and obtained judgments in the Superior Court of New Jersey on September 5, 1962 and October 1, 1962, respectively. However, there was further litigation and no payments had been made to these claimants when Carlone served its notice.

Western Electric's indebtedness to its general contractor in February and March 1962 was more than $300,000. This sum was then available to pay stop notice claimants. However, before December 6, 1962, when Carlone served Western Electric with formal notice of

its claim, the latter had paid most of this money to the general contractor, reserving only some $35,000 for disbursement to stop notice claimants. Western Electric now contends that its obligation to Carlone is only the difference between this $35,000 and the aggregate of the claims of the other four materialmen who had served it with formal notice much earlier. Carlone contends that its claim must be paid in full. Indeed, its reasoning, if adopted, will require Western Electric to pay all of the stop notice claimants in full.

Carlone relies upon the unambiguous requirement of section 2A:44–80 that the owner shall pay claims "in the order in which notices have been filed as provided by section 2A:44–77". Nothing is said in section 2A:44–77 about serving notice upon the owner. Moreover, the provision for such service which appears in section 2A:44–78 is in terms permissive: "The claimant may, after filing such notice serve a copy thereof upon the owner". And the only consequence provided for failure to make such service is that "until service of a copy of the notice upon an owner * * * he shall be protected in payments made in good faith to any contractor or other person having a valid claim". 2A:44–81.

■ We see no escape from this reasoning without doing violence to the plain language of the statute. Carlone's priority was fixed by the filing date of its stop notice. True, Western Electric would have been protected in any good faith payments to Guyon and Friedman before service of Carlone's notice, but it made no payment to either of them during that interval. It did pay large sums to the general contractor which, if made in good faith, were also protected. But $35,000 remained in Western Electric's hands when the Carlone notice was served and it then became its obligation under section 2A:44–80 to pay Carlone, Guyon and Friedman "in the order in which notices have been filed".

■ In refusing to recognize Carlone's statutory priority the district court seems to have been influenced by the fact that Guyon and Friedman had reduced their claims to judgment. But we are unable to repay "payment" in section 2A:44–80 as the mere obtaining of a judgment without actual satisfaction. Cf. Morris County Bank v. Rockaway Mfg. Co., 1863, 16 N.J.Eq. 150.

■ Beyond required respect for statutory language, this result imposes no unreasonable hardship on Western Electric. When it was served with the Guyon and Friedman notices it was obligated to determine whether these were valid claims against it. This necessarily involved checking the records of the county clerk to see whether proper stop notices had been duly filed. Such a check would have disclosed not only the Guyon and Friedman notices but also Carlone's stop notice filed on an earlier date.[1] At this point ordinary prudence would have dictated a withholding of the amount of all three claims until their validity and the extent of its obligation to satisfy them could be determined.

The exact point in this case seems not to have arisen before the courts of New Jersey. But their decisions and their discussions of the stop notice statutes are consistent with our present holding. Thus, it is said, though the point was not contested, in Brown v. Home Development Co., 1941, 129 N.J.Eq. 172, 181, 18 A.2d 742, 748, that after "stop-notice claims matured against the owner * * [the statute] obligated him to pay the same in the order in which notices had been filed". See also St. Michael's Orphan Asylum v. Conneen Const. Co., 1933, 114 N.J.Eq. 276, 282, 166 A. 458, 460. That, in our view of the statutory scheme, is Western Electric's obligation here with reference to the funds it was withholding

1. The statute requires that the county clerk maintain an index of all filed stop notices by alphabetical listing of the owners therein named. N.J.S. 2A:44–82, N.J.S.A.

from the general contractor on December 6, 1962.[2]

Finally, we are asked to reverse the district court's holding that interest on Carlone's claim is payable only from the date of judgment.

New Jersey recognizes the generally accepted common law rule that interest is payable on a liquidated obligation from the due date. Mahoney v. Minsky, 1963, 39 N.J. 208, 188 A.2d 161. Accord, Congoleum-Nairn, Inc. v. M. Livingston & Co., 1935, 257 Ky. 573, 78 S.W.2d 781; Restatement, Contracts § 337. And, with reference to the stop notice claims of Guyon and Friedman involved in this very controversy, the courts of New Jersey in awarding judgment to these materialmen, approved the allowance of interest, reasoning that these "claims being undisputed, * * * its retention of the monies because it was faced with other claims was neither a defense to the actions filed by plaintiffs nor good reason for avoiding the payment of interest. Guyon v. Western Electric Co., N.J.Super.1963, No. A–77–62. This is in accord with the rule that interest on a claim, the amount of which is certain, is not avoided by disputation in good faith over legal liability. Great Northern Ry. Co. v. Erie R. Co., S.D.N.Y.1932, 58 F.2d 414; Morton v. Godfrey L. Cabot, Inc., 1949, 134 W.Va. 55, 63 S.E.2d 861. We apply the same rule here. On December 6, 1962, when Carlone served Western Electric with notice of its $20,-000 claim, there was no dispute that this sum was due Carlone for material and labor on the Western Electric project or that the owner had withheld more than that sum from the general contractor. Western Electric's mistaken legal view that its obligation to junior claimants constituted a valid defense did not toll the normal obligation to pay interest from the due date.

Accordingly, so much of the judgment as awards Carlone $3,686.99 will be vacated and the cause remanded for entry of judgment in the amount of $20,000, with interest from December 6, 1962.

2. This does not mean that Western Electric's obligation to Guyon and Friedman is in any way diminished since it had much more than enough to pay all claimants when they served notice upon it.